IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| WILLA ONLEY, individually and on behalf of all those similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) CIVIL ACTION NO. 5:19-cv-141 (MTT) ) ) ) ) ) ) ) ) |

## ORDER

Defendant Nationwide Mutual Fire Insurance Company moves for partial summary judgment. For the following reasons, that motion (Doc. 22) is **DENIED**.

### I. BACKGROUND

On April 18, 2018, Plaintiff Willa Onley's home suffered water damage. Docs. 1 ¶ 22; 13 ¶ 22. Her insurer, Nationwide, allegedly adjusted the claim and authorized repairs but did not assess the loss to determine whether her house had suffered diminished market value due to stigma. Docs. 1 ¶¶ 23-27; 13 ¶¶ 23-27. In Georgia, diminished value is a covered component of a property loss absent an effective exclusion. Docs. 1 ¶¶ 23-27; 13 ¶¶ 23-27; *see Royal Capital Dev. LLC v. Md. Cas. Co.*, 291 Ga. 262, 728 S.E.2d 234 (2012). Onley brought suit on behalf of herself and a putative class of similarly situated persons for Nationwide's alleged failure to assess for diminished value and failure to pay for diminished value. Doc. 1.

The parties proposed a two-phase discovery period, with the pre-certification phase ending in April 2020.  However, Nationwide in its answer contended that it issued a policy endorsement excluding coverage for diminished value.  *See* Doc. 13 ¶ 27.  The Court noted that if the endorsement was effective, that would likely dispose of the case, so the Court ordered the parties to consider "[w]hether the issue of the effectiveness of the exclusion should be resolved first and, if so, whether discovery is needed on that issue."  Doc. 17 at 1.  The parties decided to address the endorsement's validity before conducting discovery on other issues.  *See generally* Doc. 20.  Nationwide then filed a procedurally vague "Dispositive Motion" based only on the argument that the endorsement modified Onley's policy to exclude diminished value coverage.  Doc. 22.

## II. DISCUSSION

### A. Standard

Nationwide does not identify the procedural basis for its motion.  However, because the parties have conducted limited discovery, the Court treats the motion as one for partial summary judgment on the issue of the effect of the endorsement.  A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The only issue raised by the

motion is whether Onley's policy excluded diminished value coverage for the April 18, 2018 loss.

### B. Analysis

Nationwide issued Onley's policy in July 2000 and renewed it annually. Doc. 22-1 ¶¶ 3, 5. For purposes of this motion, the parties agree that up until July 2, 2014, the policy covered diminished value. Doc. 22 at 6 n.4. On July 2, 2014, Nationwide issued a renewal policy for the period from July 31, 2014 to July 31, 2015. "This renewal policy incorporated, for the first time, an endorsement entitled 'Endorsement H-6182-C—Amendatory endorsement (Georgia)' ('H-6182-C')." Doc. 22-1 ¶ 7. That endorsement purported to exclude diminished value from covered property losses under the policy. *Id*. ¶ 8. At the time of the renewal, Nationwide sent Onley a one-time notice stating that the renewed policy contained

> Amendatory Endorsement H-6182-C[,] which states that your policy does not provide coverage for reduction in value of your property as a result of a covered loss. The courts refer to this type of damage as "Diminution in Value."

*Id*. ¶¶ 9-10. Subsequent versions of the policy retained endorsement H-6182-C, but not the notice. *Id*. ¶¶ 12-13.

At the time of the renewal, Georgia law defined "renewal" to mean a policy "superseding at the end of the policy period a policy previously issued and delivered by the same insurer and providing *no less than the coverage contained in the superseded policy*." O.C.G.A. § 33-24-46(b)(4) (2014-2018) (emphasis added). The statute also required that "No insurer shall refuse to renew a policy to which this Code section applies unless a written notice of nonrenewal is mailed or delivered in person to the named insured." O.C.G.A. § 33-24-46. In effect, an insurer could either (i) renew a

policy, maintaining the same level of a coverage as before; or (ii) reduce coverage by nonrenewing and issuing a new policy, which required a notice of nonrenewal.  For purposes of the motion, Nationwide admits that the endorsement, if effective, would have reduced Onley's coverage.  Docs. 22 at 6 n.4; 24 at 2 ("for purposes of this Motion, Nationwide assumes, *arguendo*, that it violated the Statute by failing to provide a notice of nonrenewal.").

Nationwide argues that it both renewed the policy *and* reduced coverage.  But under the statute, Nationwide could not do both.  By definition, "renewal" meant "providing no less than the coverage contained in the superseded policy."  O.C.G.A. § 33-24-46(b)(4) (2014-2018).  Nationwide's statement that "the Policy *was not* 'nonrenewed'" is inconsistent with its contention that the endorsement reduced coverage by excluding diminished value.  Doc. 22 at 12, 6 n.4.  Nationwide must choose a position: either the 2014-2015 policy was a "renewal" under the statute and thus covered diminished value, or the policy was a "nonrenewal" under statute because it reduced coverage.  It cannot be both.

Onley takes the position that the 2014-2015 policy was a renewal, and the Court agrees.  First, Onley notes that the policy described itself as a renewal policy.  *See, e.g.*, Doc. 22-1 at 178.  Second, although Nationwide might have attempted to reduce coverage by nonrenewing the policy, that attempt failed. That is because Nationwide did not send a notice of nonrenewal, and absent such a notice, the policy was renewed.  Because it was renewed, the policy retained the same coverage as the superseded policy.  *See Strickland Gen. Agency v. Puritan Ins. Co.*, 184 Ga. App. 286, 287, 361 S.E.2d 186, 187 (1987)  ("The trial court further held that under the terms of the subject

policy itself, as well as under the controlling statute, the insurer is required to give the insured at least thirty days' written notice of nonrenewal; otherwise, the policy is automatically renewed. . . . We agree with the trial court's analysis of the situation."). Simply put, Nationwide's 2014-2015 renewal policy did not reduce Onley's coverage.

By analogy, if a statute provides that an insurer can only cancel a policy by sending a compliant notice of cancellation which meets certain conditions, and the insurer sends a noncompliant notice of cancellation, then the insurer simply failed to cancel the policy. *Pa. Nat. Mut. Cas. Ins. Co. v. Person*, 164 Ga. App. 488, 489, 297 S.E.2d 80, 82 (1982) ("failure to adhere to the requirements results in noncancellation of the policy."); *see also Reynolds v. Infinity Gen. Ins. Co.*, 287 Ga. 86, 91, 694 S.E.2d 337, 340 (2010) ("until the statutory notice requirements are met, the policy remains in effect."). Similarly, Nationwide's failure to give notice of nonrenewal results in the renewal of the policy.

The Court stated its position in response to a similar argument by the insurer in *Thompson v. State Farm Fire & Cas. Co.*:

> [The insurer] cannot have it both ways; either [the endorsement] reduced coverage or it did not. And if [the insurer] did not want to renew coverage for diminished value, both O.C.G.A. § 33–24–46 and [the insurer's] policies required notice that the policy was not to be renewed as originally written. Whatever [the insurer's] notice did, it did not do this. Accordingly, the renewal policies are indeed renewals of the old policies and therefore cover diminished value.

264 F. Supp. 3d 1302, 1312-13 (M.D. Ga. 2017) (citations omitted). Despite Nationwide's argument that it can "have it both ways," the 2014-2015 policy was clearly a renewal, and therefore, by definition, it covered diminished value. As did subsequent

renewal policies, including the 2017-2018 policy that was in effect at the time of Onley's loss.

Even if the Court accepted Nationwide's contention that the endorsement reduced coverage—and, by necessary implication, that it nonrenewed Onley's policy in 2014—Nationwide's argument would still fail.  If the endorsement reduced coverage, then Nationwide's statement to Onley that it was merely renewing her 2014 policy was a false representation.  Doc. 22-1 at 178.  In describing the new policy as a "renewal," Nationwide represented that the policy offered the same level of coverage as the old policy.  Such a misrepresentation is not a "merely technical" violation, but instead goes to Onley's reasons for entering the contract.[1]

In sum, the Court views the 2014-2015 policy as a renewal, and thus the endorsement was never effective.  But even if the 2014-2015 were viewed as a nonrenewal, the endorsement would not be enforceable, because Nationwide misrepresented the scope of coverage.

Nonetheless, the Court will address Nationwide's arguments at greater length. Nationwide's arguments all rest on the flawed premise that the 2014-2015 policy both was a renewal *and* reduced Onley's coverage.  Again, that position is self-contradictory because the statute defines a renewal policy as one that does not reduce coverage. Although Nationwide's arguments are creative, they do not ever adequately address that statutory definition.

---

[1] Similarly, the policy itself required notice of nonrenewal.  Doc. 22-1 at 171 ("If we elect not to renew, we will mail written notice to the named insured, at the address shown in this policy, at least 30 days before the renewal date of this policy.").  Again, assuming only for the sake of argument that Nationwide nonrenewed the policy and reduced Onley's coverage, its failure to send notice and false representations also breached the contract.

First, Nationwide mistakenly argues that O.C.G.A. § 33-24-12(a) expresses a "strong public policy" in favor of enforcing endorsements in insurance policies. It does not. Instead, the statute simply states that one invalid provision does not invalidate the entire policy:

> Any insurance policy, rider, or endorsement issued and otherwise valid which contains any condition or provision not in compliance with the requirements of this title shall not be rendered invalid due to the noncomplying condition or provision but shall be construed and applied in accordance with such conditions and provisions as would have applied had the policy, rider, or endorsement been in full compliance with this title.

O.C.G.A. § 33-24-12(a). That provision does apply here: the presence of the noncompliant endorsement does not void the policy. Instead, the Court construes the policy as a renewal—one which provided the same level of coverage as Onley's previous policies.[2] Moreover, Nationwide's attempt to invoke § 33-24-12(a) to cure its failure to comply with statutory requirements for reducing an insured's coverage turns the statute on its head.

Nationwide also argues that the endorsement is valid because Onley received actual notice of it. But the notice in question did not notify Onley of a nonrenewal or even a reduction in coverage.[3] Instead, it referred to the policy as a "renewal." Doc.

---

[2] For an example of how O.C.G.A. § 33-24-12(a) works, if a statute requires certain minimum benefits, but a policy purports to cover less than the minimum, courts do not void the policy, but instead construe the policy as covering the statutory minimum. *See Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709, 713, 300 S.E.2d 673, 677 (1983). Nationwide, by contrast, appears to interpret the statute as stating that noncomplying insurance provisions are valid—which is certainly not how anyone else has interpreted it. Further, Nationwide cites the statute for the proposition that its failure to give notice should not void the endorsement. But that also misreads the statute: the statute refers to a policy which "contains any condition or provision." Doc. 22 at 6 (quoting O.C.G.A. § 33-24-12(a)). Violation of a notice requirement is clearly not a "condition or provision" contained in the policy. That is clear, and the Court already stated it in *Thompson*.

[3] In the wake *of Royal Capital*, some insurers were slow to acknowledge their policies covered diminished value. Thus it is possible, even likely, that Nationwide did not refer to the change as a reduction in coverage because it did not want to concede that its policies had ever covered diminished value. Indeed, Nationwide "*expressly preserves*," even now, the argument that its policies never covered diminished

22-1 at 178. Onley, therefore, did not receive clear notice of Nationwide's attempt to reduce her coverage. Further, if Nationwide failed to nonrenew her policy and thus provided the same level of coverage as it had before, then it does not matter whether Onley received actual notice or not—the endorsement was invalid either way. Nationwide cites two cases for the proposition that notice deficiencies do not necessarily void an endorsement, but those cases address the insurer's failure to promptly mail a policy after the terms were already agreed upon. Neither of the two cited cases is relevant.[4]

Nationwide also argues that its failure to give notice is a technical violation that should not void the endorsement. The Court rejected this argument in *Thompson v. State Farm Fire & Cas. Co.*, noting that "failure to give statutorily—and policy—required notice to the insured of a discontinuation of coverage, unlike failure to obtain prior approval from the Commissioner, cuts at the underlying contractual obligations of the parties. Indeed, the policy—the parties' contract—requires the notice of nonrenewal. Accordingly, [the insurer's] failure to fairly inform its insured of its nonrenewal of

---

value. Doc. 22 at 6 n.4 (emphasis in original). For an overview of different ways insurers responded to *Royal Capital*, see *Anderson v. Am. Family Ins. Co.*, 350 F. Supp. 3d 1295, 1297 (M.D. Ga. 2018).

[4] In *Danforth v. Gov't Employees Ins. Co.*, 282 Ga. App. 421, 425, 638 S.E.2d 852, 857 (2006), the insured, Bulman, telephoned GEICO, and she and GEICO agreed to take a Taurus off of her policy in return for a reduced premium. More than a month after that, she was in an accident, and the insurer denied coverage. The court of appeals ruled for the insurer despite the insurer's failure to promptly mail her a copy of her new policy as required by statute. In that case, however, the insured had requested the modification in her policy and reached an agreement modifying the policy *before* the alleged notice deficiency. Here, Nationwide modified (or attempted to modify) the policy but represented to Onley that it had not modified it.

In *Williams v. Fallaize Ins. Agency, Inc.*, 220 Ga. App. 411, 412, 469 S.E.2d 752, 753 (1996), Williams, the insured, suffered a loss when someone stole $13,000 out of her unattended car. Her insurer denied coverage because the policy excluded thefts from unattended vehicles. The court of appeals rejected Williams's far-fetched argument that the insurer was obligated to pay her because it had failed to promptly mail her a copy of her policy. The Court took care to note that Williams's "renewed policy was identical [to the previous policy] in all material respects. Both the original policy and the renewed policy contained the same exclusion for unattended vehicles[.]" 220 Ga. Ap. at 411. Clearly the court in *Williams* did not intend to address an insurer's attempt to reduce coverage in a renewal policy.

diminished value coverage is not a mere technical violation of Georgia insurance law." 264 F. Supp. 3d at 1314.  The Court's view has not changed since it entered that order.

Nationwide's observation that the statute does not affirmatively require courts to void endorsements for lack of notice likewise misses the point.  Again, Nationwide simply failed to nonrenew the policy.  It is not a question of a judicial remedy for an administrative violation, as in the cases cited by Nationwide, but rather a question of the terms of Onley's contract with Nationwide at the time of her April 2018 loss.  Similarly, Nationwide's argument that Onley was not harmed by Nationwide's failure to nonrenew her policy is irrelevant.  Doc. 22 at 12.  Nationwide failed to modify the insurance contract, and it does not matter whether its botched attempt to modify it harmed Onley or not.[5]

Nationwide's most far-fetched argument is that Onley lacks "standing" because she has not alleged an injury from Nationwide's statutory violation.  *Id.* at 14.  Nationwide argues that "[a]llowing Plaintiff to invalidate and [sic] otherwise disclosed provision in the Policy would create a *de facto* private right of action where none exists." *Id.* at 15.  That argument fundamentally misunderstands this lawsuit.  Onley did not sue Nationwide for failure to send a notice of nonrenewal, but for failure to properly adjust her April 2018 property loss.  Nationwide is undoubtedly aware that Georgia law allows a cause of action for insured parties alleging their insurer underpaid a claim.  But

---

[5] Nationwide also tries to support its argument by citing caselaw holding that breach-of-contract plaintiffs "must show that breach 'resulted in damages that would not have occurred but for the breach.'"  Doc. 22 at 14 (quoting *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1132-33 (11th Cir. 2014)).  But that principle is not relevant to this motion: Onley is not seeking damages for Nationwide's failure to provide a notice of nonrenewal, but for its failure to assess and pay for diminished value.  Admittedly, diminished value damages can be difficult to prove for a given loss.  *See, e.g.*, *Anderson v. Am. Family Ins. Co.*, 350 F. Supp. 3d 1295, 1296 (M.D. Ga. 2018).  But clearly Onley is under no obligation to prove damages from Nationwide's violation of the statute.

Nationwide's briefs are confused on that point and remain confused on it.  *See* Doc. 24 at 8.

Finally, Nationwide argues that sufficient time has passed since the endorsement that Onley is bound by it.  Doc. 22 at 15-17.  Nationwide makes two arguments based on the passage of time.  Its first argument is that the endorsement was valid in Onley's 2017-2018 policy because it had been valid in her previous policies.  *Id.* at 15.  That of course begs the question of whether the endorsement was valid in Onley's previous policies.  Nationwide has no answer, apart from the arguments already discussed.[6]

Second, Nationwide frets that "imposing years of unanticipated liability upon the insurance industry could reduce the availability and affordability of insurance state-wide."  *Id.* at 16.  But *Royal Capital*, which was decided in 2012, made clear that policies like Nationwide's covered diminished value unless that coverage was properly excluded.  Nationwide knew exactly what it needed to do to limit its liability after *Royal Capital*—follow the procedures required by O.C.G.A. § 33-24-46 and issue a new policy excluding coverage for diminished value.  That Nationwide may be liable for diminished value was neither unanticipated nor unavoidable.

For the reasons discussed above, Nationwide has failed to demonstrate it is entitled to judgment as a matter of law.  Accordingly, its motion for partial summary judgment (Doc. 22) is **DENIED**.  The stay of discovery ordered September 16, 2019 (Doc. 21) is lifted.

---

[6] This confusion appears to stem from Nationwide's self-contradictory argument that the 2014 renewal policy reduced coverage and, consequently, that the endorsement was effective from the date of renewal.

**SO ORDERED**, this 28th day of January, 2020.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
